I'm Noreen Evans. I'm here representing the appellant JKT Associates. And I would like to reserve three minutes of time for rebuttal, please. All right. And unless the court desires me to address a particular issue, I'd like to really just jump into what we think is the heart of the matter before the court. And that is the ambiguity of Attains Earth Movement Exclusion in the policy, which was... Ms. Evans, your voice is fading out just a little bit. So if you can speak a little closer to the microphone, let's see if we can hear you a little bit better. I apologize, Your Honor. I suffer from allergies and... No problem. ...the main concern is my voice ebbs and flows, which is the main thing for an attorney that earns her living by using her voice. No problem. I'll do my best. I just want to make sure that we didn't miss anything. Thank you. Every word, you hang on every word. Can you hear me better now? Yes. Thank you. Great. So unless the court wants me to address a particular issue, I do want to jump right into what I think is the heart of the matter in front of the court. And that is the ambiguity of Attains Earth Movement Exclusion, which was the basis for district court summary judgment in the case. I wanted to point out that both parties have actually cited a number of cases that have interpreted this particular exclusion, but all of the cases that both parties have cited, except for two, do not deal with the specific language in this particular policy. Most courts have looked at this exclusionary language and said that it is ambiguous, where it doesn't define the kind of cause, whether it be a man-made cause or a natural cause of the earthquake. In our case, though, as well as in North River and in the Wilmar case, both of which we cited to the court, those two cases plus ours actually deal with some slightly different language in the exclusion. And in all three of our cases, the exclusion is applicable to certain kinds of work or operations conducted by the insured. In both North River, which was relied upon by the district court in this case, and in Wilmar, both of those exclusions and those policies applied to not only the insured's operations, but also the insured's work. And so it's clear that policies, including this one, make a distinction between the definition of operations and your work. In both North River and Wilmar, however, neither court reached the, neither court interpreted the language of the exclusion as applied to the insured's operations or work. So it appears to be an open question. And I think that's- What's the potentially covered claim here? Well, there's two. That's independent of damages arising out of the landslide. The non-landslide damages, which we believe would be covered independent of this exclusion, would be the harm that JKT is alleged to have caused to the subsurface drainage system. And that is an existing drainage system. It's not a system that JKT is alleged to have installed or developed or designed. But where in the complaint does it assert that they're trying to collect damages from those actions that are independent of the landslide? I mean, don't all the damages being sought in both of the underlying cases, don't all those damages flow through the landslide from the challenge conduct? You need something that goes around the landslide and has damage that's independent of it. And what is that? Right. And Attain would have you read the complaint in a very narrow sense. If you look at Meese's prayer in the Meese complaint, Meese is seeking all damages approximately caused by the negligence of the defendants. And our contention is that JKT... As I read the complaint, the negligence claim is based on damages resulting from the landslide. So I'm trying to figure out whether the complaint even attempts to present any claim for damages that's independent of the landslide. It does talk about the drain issue, but really that was in the hillside was unstable. You knew that it was prone to landslide and your actions with regard to the drainage basically precipitated this landslide that then caused damages. That's how I read the complaint. Well, and I think that is a narrow reading of the complaint. If you actually look at it more broadly, which I think the court is required to do, the Meese complaint is alleging that there was broken pipes, drains, and sub-drains, and that that caused an accumulation of water on the property over a period of years. But do they claim damages? That accumulation of water, it made the area very soggy and it damaged this picnic bench that was out there. It had to be replaced. I don't see anything like that. Nowhere in the complaint does it say that the landslide is the only element of damages. And as I've pointed out in the prayer, the prayer is very broad. It alleges various acts of negligence by various parties, including JKT. But it also alleges the breakage of the pipes, the drains, and the sub-drains. And it's a conclusion, a factual conclusion, that I think is being drawn here, that the only item of damages that was caused was the landslide. The landslide is without a doubt the largest element of damages. Can't argue that. But the accumulation of water, unwanted water, and that's the language that's used in the an item of damages. And that's what we believe is covered by the attained policy. Let me ask you about the Senate complaint. It alleges that the defendants, quote, encroached an easement for storm water and irrigation drainage on property. It wasn't clear to me whether that was being asserted as an independent basis for damages. Well, that's exactly what I'm trying to describe here, your honor, that the accumulation of water or the drainage of water onto somebody's property where it's not wanted and it's not supposed to be is itself an element of damages. And you're correct that the Senate complaint actually calls that out more specifically. But I think it can easily be fairly inferred in the Meese complaint as well, because the Meese complaint does not have any language that says the only item of damages the Meeses are seeking to recover is from the landslide. It seeks all damages approximately caused by the negligence of the defendants. So you're saying that we should read the complaint broadly to basically construe a standalone claim based on the damage to the drain pipes. Was that the way it was argued on summary judgment? And I looked at the opposition to the motion for summary judgment below. I don't recall that type of argument that regardless of whether the landslide or whether the earth movement exclusion basically prevents recovery for damages in this case, that we do have a claim that the court needs to analyze. Was that brought up to the district court? I would say that that was not specifically brought up to the district court. But what was argued in the court below was that Attain has the burden to show that nothing alleged in the complaint is covered by its policy. And in addition, there was an objection that the district court had not So I think a broad interpretation of what was argued below could fairly be presumed to include the argument that I'm making here. Because Attain does have that burden. And it's indisputable in my mind that Attain has not met that burden. Plus, this is a de novo review by this court. So the fact that it wasn't discussed specifically by the district court, I don't believe precludes this court from making that determination. The other thing I wanted to point out to the court on the issue of interpreting the word operations, which was something that both parties argued in our briefs, Attain takes the position that operations and your work are synonymous. And they're not. As I mentioned in my discussion of the Wilmar and the North River case, other insurance companies have made that distinction. Attain chose not to. The term your work is used throughout the policy, but the term operations is not. And I would direct the court's attention to the insuring agreement in the policy, which states that the policy does not cover damage to your work. It doesn't include the language that the policy does not cover damage caused by your work. And I think that's a really important distinction, because we've argued that operations means work in progress, activities happening on the job, which in this case had occurred several years prior to the landslide. So that under that interpretation of the policy, which I think is a reasonable one, this Earth Movement exclusion would not apply. And with that, I'd like to reserve my time for rebuttal. Sure. Thank you. Good morning, Your Honors. My name is Gail Stargardner, and I represent Attain Specialty Insurance Company. Are you able to hear me? There's an echo, so let me turn down the volume and see if that helps. All right, let's try again. Good morning, Your Honors. My name is Gail Stargardner, and I represent Attain Specialty Insurance Company. Is that any better? Better. Thank you. Okay. Thank you. Your Honors, this is a lawsuit filed by two property owners for damage caused by a landslide in 2019. There are no allegations or complaints or allegations of seeking damages for property damage that occurred at the time the landscaping and hardscaping was performed back in 2011. But your burden under California law and the duty to defend is to show that there's no conceivable set of facts under which any portion of the claims asserted in those complaints falls within the coverage of the policy. So even if one sliver of it is within there, that would be enough for a duty to defend the entire lawsuit. And so their claim is, given the general language, why wouldn't the claims of damage and accumulation of water be included within the policy and therefore trigger the duty to defend the whole suit? Because no damage occurred as a result of that accumulation of water until 2019, and the damage caused by the accumulation of water was a landslide, which is excluded from coverage. The other problem they have is that in 20... What's the proof? Has it already been clearly established from materials from the underlying litigation that that's not conceivably a claim or a possibility in that case? Did you present evidence to establish that that's excluded? The problem with the... First of all, in the underlying action in the district court, the claims of the damage it caused in 2011 was never raised by JKT. It was first raised in this court. But they have another problem, and that's in 2011, Attain didn't issue a policy to JKT. There's no evidence before this court that we even issued a policy covering such damages at that time. So that is... Their claim, their response to that, and I'd like to hear your response back, is that the condition of accumulation of water would have continued into the policy period and certainly preceded the collapse of the hillside prior. That's correct. That is what JKT is contending. But as your Honor pointed out before when discussing this with Ms. Evans, they don't seek any damages because the ground is soggy in 2018. They don't seek any damages that because the ground is soggy, a picnic table sunk into the earth in 2018. What both complaints clearly allege is that in 2019, the earth began to slide, causing damage to the perogola, the fireplace. The earth continued to slide, shearing the pipe, and then continued into this catastrophic landslide for which they are seeking damages. The damages being sought are from the landslide. That's it. And even broadly reading the complaint, it still only seeks damages caused by that landslide in 2019. And in fact, in the introduction to JKT's opening brief, they affirm that plaintiffs are seeking damages for the landslide in 2019. A prayer for relief, it's not allegations. The complaint, it's a landslide claim, and our policy excludes coverage for damage caused by a landslide. When we turn to the exclusion, the exclusion is not ambiguous. The exclusion has to be construed in the context of the policy as a whole, and in the facts of this claim. And when you look at the exclusion, what JKT has never acknowledged and never addressed is that like the cases, or the exclusions before the court in City of Carlsbad, City of Fullerton, and Employers Insurance Company versus Lexington, the last two of which were affirmed by the Ninth Circuit, this exclusion contains causation language. It provides a broad definition of what earth movement is, but then it says that the exclusion applies whether or not earth movement arises out of any operations by or on behalf of the insured. And that is causation language, and in the facts of this claim, the allegations are that this landslide arose out of operations performed by the insured. What were those operations? Installation of the landscaping and hardscaping at 1213 Tallgrass Court. There is absolutely no ambiguity in this exclusion. Under California law, the term arises out, broadly connects the insured's activities with the excluded activity. This is very, very clear. It is not ambiguous, and we can't take it out of context and try to create an ambiguity where it exists. With respect to Judge Rakoff, I hope I said that correctly, a question about... You said it correctly, and about 1 out of 20 people do, so I congratulate you. Thank you. The reference to the easement, was the damage to the easement a separate claim for is, interference with an easement under California law is not property damage that would be covered under the coverage A insuring agreement, and the citation to that is the Kazi versus State Farm case. It's a California Supreme Court case, and to the extent that they're claiming an interference with the right of private occupancy under coverage B, the policy requires that that interference with the right of private occupancy be caused by the owner, landlord, or lessor of the property, none of which is JKT. JKT doesn't own the property, it's not the landlord of the property, and it's not the lessor of the property, so the claims don't fall within the coverage B insuring agreement either. The cases that JKT rely on, Nautilus and Wilmer, have one glaring omission, they do not contain the causation language that is included in the attained policy, and again, JKT never addresses that, they never acknowledge that, they simply rely on exclusions that are not the same as this exclusion. In addition to the subsidence exclusion, we also argue that we have a professional services exclusion, which would again remove all potential for coverage for this claim. I mean, the negligent acts that are alleged in the complaint, you know, cover the waterfront of everything they could think of, and, you know, the professional services would only exclude those things that would be in some sense professional. Isn't there some possibility of a claim in the case of a type of negligence, maybe some of the types of negligence fall within professional, but some of them are not? No, your honor. Under California law, professional services include skilled services, and they also include manual tasks related to the provision of those skilled services. California law is clear, a CGL policy is not a performance bond. It is not meant to ensure any damages arising out of the insurance provision of the services it performs, and by including that exclusion in the policy, an insurer simply confirms that the CGL policy is not meant to be a performance bond in any way, shape, or form. So, I'm looking at a case, N Counties Engineering Inc. versus State Farm 169, California Reporter 3rd 726, which, from the California Court of Appeals 2014, which seems to say that construction work is not covered by a professional service exclusion. What about that? The distinction in that case, your honor, was that State Farm issued the policy to North Counties in its capacity as an engineering firm. The work that was performed on the dam, and for which they were sued, was not their engineering service. It was for construction of the dam, and the court distinguished the facts of that case in the application of the exclusion on that basis. Here, we ensure JKT is a landscaping firm. The professional services they performed were landscaping services, and both complaints and all demands issued to attain state that the plaintiffs are seeking damages because JKT's landscaping services were negligently performed, causing a landslide. Does the court have any more questions they would like me to address? It doesn't appear that we do. Thank you very much, your honors. I appreciate the time. Thank you. Ms. Evans, you'd save some rebuttal time. Yes, thank you, and there are a couple of points I wanted to address. I'll take the last one first. JKT is not here arguing that this policy is in the nature of a performance bond, and this goes back to the language of the insuring agreement that I cited to you a little bit earlier. The policy does not cover damages to your work. That means the policy is not a professional liability policy that would cover negligent professional acts. It's not in the nature of a malpractice policy, but it is a commercial general liability policy, so it covers damages caused by your work. That's the distinction that I think the court needs to make here, and the distinction that attain is not recognizing. We're not here seeking to be covered for acts of professional liability. We're here seeking what JKT purchased, which is coverage for negligence that happened during his commercial operations. It's not hard. This is the kind of policy that he purchased. It's very fundamental. The second thing is, I think it was Justice Collins asked if there was any evidence that was produced in the district court, and attain answered the question in the negative, but in fact, there was evidence with respect to the damage that was occurring between the time that JKT performed its work and the landslide. In 2019, it's undisputed that there were torrential rains in Napa County, and that's actually even alleged to be part of the reason the landslide occurred, and it's also in the pre-suit letters, so there was actually evidence in front of the district court. But does it cross the line from going from causation and part of the narrative to being part of the claim damages? So where is the claim for damages from arising from soggy ground? Well, I think that's alleged to be part. There are a number of concurrent factors that are alleged to have caused the landscape. One was that the ground was already soggy, allegedly because JKT, years before, had broken the pipes and caused the accumulated, the water to accumulate on the property. But you need to have an item of damage that is independent of the landslide in order to have a colorable claim that would fall within the policy, and so where is the claim for damages from soggy ground that's independent of the landslide? Where is that in these underlying complaints and cases? And again, it comes, circles back to, I think, where we began, which is that Meese's complaint seeks recovery of all damages approximately caused. There's no language in the complaint that limits it to the landslide damages. There are allegations that broken pipes allegedly caused by JKT caused accumulated water, and that is an occurrence as defined in Attain's policy. Attain also mentioned that they didn't cover JKT back in 2011, but their definition of occurrence in their policy is continuous exposure, and so that's exactly what happened here. JKT is alleged to have done something that caused water to be accumulating over a period of time that we contend is a standalone item of damages, and in addition, it's also alleged to have caused a landslide. And with that, if you have no further questions, I'm happy to conclude. Thank you, Ms. Evans. The matter is submitted for a decision. Thank you both for your argument today. That's the last case set for argument, so we'll be in recess until tomorrow.
judges: Nguyen, Rakoff, Collins